I'm going to call the first case, which is 116389, Bridgeview Health Care Center, Ltd. v. State Farm, and it's agenda number 10. Are you ready to proceed? Yes, Your Honors. Good morning, Your Honors. May it please the Court. This Court looked at choice of law issues in depth in two cases in 2007. Could you give us your name, please? Oh, I'm sorry. I'm David Oppenheim. I'm here on behalf of the appellant, Bridgeview. This Court looked at choice of law in two cases in 2007, Townsend v. Sears Roebuck and Barbara Sales v. Intel. And what the Court said in the Barbara Sales case is that Illinois courts should not be burdened with the application of foreign law unless the circumstances really warrant it. In Townsend, what the Court said is a choice of law determination is required only when a difference in law will make a difference in the outcome. What this case today is about is whether the Court really meant it when it said that in Townsend. Because this case really distills the question of, do we need a difference in law? We have a circumstance where this Court has ruled squarely on the coverage issues presented in this case. It did so in 2006 in a case called Valley Forge Insurance v. Swiderski. And in so doing, it explicitly rejected a prediction of Illinois law that was made by the Seventh Circuit Court of Appeals. That prediction, in a case called American States Insurance Company v. Jackson Capital Associates, was the source of three lower federal trial court opinions ostensibly applying Indiana law in finding consistent with American states. So what we have today is eight years after Swiderski was decided, an insurance company in this state arguing that American states is the law of the land on the pretext that there is something about the trial court decisions that is indicative of Indiana law, and thus there is an actual conflict of law between Illinois and Indiana on the question. The First District has held in a case called Gleim v. Roberts that I don't think is really under challenge, that it's the party that seeks to apply a foreign law in Illinois courts that bears the burden of proving that a conflict exists. And I think that the Gleim, that holding, is entirely consistent with what this court said is the principle in Barber's sales. And what we have, we have a large insurance company with learned counsel who have, has fought this issue all the way up the chain. We have an amicus group of multiple other insurance companies that provided their own brief to help the court. And in none of the 50-odd pages of briefing combining the two in this court is a single Indiana decision or statute cited. So in other words, what Appellees would argue and what the appellate court held is that you can meet your burden to establish an actual conflict of law between states without actually relying on any state law. And I would maintain that that approach is entirely inconsistent with what the court said in Townsend, requiring a difference in law. And the better approach is the approach taken by the First District in 2009 in a case called Pekin Insurance v. Xdata, dealing with the same question of insurance coverage law as is present in this case. And what the Xdata court did is they analyzed Townsend as well as several other choice of law decisions from this court and from the appellate courts, and determined that difference in law meant that you needed to actually point to some sort of precedent. Or some statute of the foreign state that provides an outcome determinative difference with Illinois law in order to get past the first hurdle in terms of applying some other state's law. And the Xdata court concluded that because all of the insurer in that case presented, like the insurers in this case, were three federal trial court judges. And all three of those judges made federal court decisions, none of which discussed or relied in any way on Indiana law. Mr. Oppenheim, are you saying that we shouldn't look to federal court decisions? I am not saying that we shouldn't look at them. I would analogize it to the federal court predictions or reviews. And many federal court decisions are extremely descriptive about what the state court cases say. And to the extent that the analysis of a federal judge is accurate and that we find, that your honors find them to be accurate, then certainly they can be a source of discerning a conflict. But the outcome of the federal case has nothing to do with it. It's what the actual state law is. And here, the problem that State Farm has and that the insurers have is that these federal cases don't look at Indiana law. They don't turn on Indiana law. The only case that the federal cases cite from Indiana is a case called Odd Owners v. Harvey, which is entirely consistent with how Illinois looks at federal court decisions. And it's a case that doesn't look at insurance coverage for intentional acts with unintended consequences. So I think that to the extent that the insurer's argument is, well, Bridgeview wants courts to ignore federal cases, that's really not the argument. The argument is that the federal cases and their outcomes in and of themselves are insufficient to create a difference of law. Simply because they're not law. And that's a point, actually, that I don't think that there's a whole lot of controversy over. I know that there are a long line of cases from the Illinois courts that say that federal predictions of state law are not precedential. There are cases, similar cases, and we've cited them in the briefing from Indiana. And quite frankly, there are cases out of the federal courts that say that federal district court decisions, which is what we're dealing with here, are not precedent in those courts either. So essentially what we've got is a federal judge following American states in the context of an Indiana insured. And the argument that that alone is sufficient to carry the burden that there's an actual precedent of state law. Difference in law. An outcome determinative difference in law. And if that is the case, then I would submit that it's not that different than an advocate in their briefing coming up with some detail about the composition, say, of a Supreme Court in another state or a trend or something else that's not really based on law. In arguing in a brief that there's a conflict. And if that's sufficient, then really the requirement in Townsend of an actual conflict in law to even get into the choice of law analysis is illusory. Because you're always going to be able to meet it. So the question is, we see it before the court, although obviously the court will fashion the appropriate test. But is it, was the first district right in 2009 in X data or are they right in 2012 or 2013 in Clark, Bridgeview, State Farm? And we submit that not only is X data more consistent with what was stated in Townsend, it's also more consistent with two important policies governing the operation of Illinois courts. The first is the one that was stated in Barbara Sales, stated before in Gridley v. State Farm, which is that Illinois courts are a source of Illinois law and they're familiar with Illinois law. And it is a burden to have to learn another state's law in order to apply it. And frankly, it's even more of a burden to have to invent another state's law out of whole cloth, which is what the court would have to do in this case. And so a test that requires something concrete, something precedential and actual in terms of a difference of law in order to get into that possibility, I think, is consistent. It's consistent with the policy stated in Gridley and Barbara Sales. Secondly, and this is interesting given what was stated in the amicus brief, I think that the X data rule provides clarity for both courts and litigants. It's a bright line rule. If you've got a statutory or a precedential state law conflict, then perhaps there will be another state's law applied. If you don't, there won't. If the choice of law analysis is warranted, what are the contact arguments? I'm sorry, Your Honor? What are the arguments regarding the most significant contacts? Well, Your Honor, in this case, it's interesting that the insured, the injured party and the insurer are all Illinois residents. And so, and we've argued this in the briefing all the way up, none of the courts have reached it, but there really is no reason, even if we were to accept that there were a conflict of law between Illinois and Indiana, there is no reason to depart from Illinois law when all of the parties are Illinois residents. And significantly, and I know this has been a point of contention just to set the factual record, the named insured in this case is an individual by the name of Jerry Clark. Jerry Clark resides in Clark County, Illinois. He has a business that's right over the Indiana border called Digital Affordable Healthcare, but it's a DBA. It's not a legal entity in any way. And more importantly, it is not the insured entity. The insured is Mr. Clark, the Illinois resident. So I would, we maintain that even if the court were to agree that there were a conflict of law necessitating the lapham-hickey type analysis, that in this case, the signs would point to Illinois. And the posture of the case, as I understand it at this point, it would go back to the trial court to determine an issue, most significant contacts. And then if they say Illinois, that ends the case, right? I think that's right, Your Honor. If they say Indiana, then we're sure opposed to this following any federal precedent or trying to determine. Is the issue of most significant contacts before us at this point? Well, my understanding is that when you take a case, you take all the issues in it. And certainly the posture getting it up here was a cross motions for summary judgment in which we argued both that there was no conflict of law and that Illinois would apply under a significant contacts analysis anyway. So I would say that that issue is before Your Honor. Is the issue of whether there is in fact a conflict before us or is that something we should address? Yes, absolutely. I mean, that is the crux of the briefing. And just keeping with that thought, if we agree with you on the first issue, the conflict of law issue, there's no reason to go into the second issue, right? I think that would be your position. That's correct, Your Honor, because my understanding of Townsend is without a conflict of law, Illinois law applies. Illinois law is clear, and I don't think that State Farm is even arguing that there's no coverage under Illinois law. The only dispute that I think is in the briefs is if we do get to that second issue, whether a remand for a determination is appropriate or whether we should determine that based on what's before us, right? That's correct, and I think that either... Obviously, I don't think that you should get to that stage, but I think either course of action would be appropriate. Unless Your Honors have any further questions, I'll reserve my time. Thank you. Good morning, Your Honors. My name is Rosa Tumey-Allen, and I, along with Michael Borders, represent State Farm Fire and Casualty Company in this appeal. The issue that this Court is asked to consider is whether an Illinois State trial court has the discretion to consider persuasive, non-binding authority from a sister state's jurisdiction to determine whether an outcome-determinative conflict exists, so that it is necessary to proceed to the next step in the choice of law analysis, which would be the most significant context test. The appellate court in this case correctly held that a potential conflict did, in fact, exist between Indiana and Illinois, because Indiana's federal district court opinions on the question presented conflict with the outcome that we would have in Illinois. If Illinois law applied. Counsel, if we disagree with you and the appellate court in this instance that the predictions by the federal court as to what the law would be in Indiana, if we disagree that that creates a conflict, are you left with anything? Is part of your argument that silence is enough to create a conflict, or do you lose if we disagree on the issue of the federal district court not being precedent? Well, a federal district court opinion is binding, non-binding persuasive authority is not precedential. State Farm does not take that position. State Farm's argument is that the trial court should have at its disposal, in whatever context it is considering, it should have at its disposal all tools, including the ability to consider or have the discretion to consider federal district court opinions, which represent non-binding. Now, in answer to your question, what would State Farm be left with? If this court were to agree with Bridgeview, then it would be, in effect, adopting the ex data rule, which counsel referred to as a bright line rule. And that is a very difficult precedent to set, because ex data is actually antithesis of good public policy. What ex data does, it provides an easy answer, no doubt, but beware of easy answers. The problem with ex data is that it says, in a siloed situation, conflicts of law scenario only, federal district court opinions do not exist. Courts must put on blinders, ignore them completely, and apply Illinois law. That's not exactly true, though, is it? I mean, the federal district case serves as a prediction of what would occur. And that's the question, right? Whether that prediction of what the state court would find is actually something that would create a conflict. Right, and that is sufficient to create a conflict. The First District in Sterling found that an uncertainty with respect to the application of the scope of the attorney-client privilege under New York law, that there was uncertainty as to the scope of that application. That conflicted with what was established Illinois law, and that was sufficient to create a conflict. Similarly, the Third Circuit in the Pacific Employers case had a situation very similar to what we have here, which is we have a state with settled law, in that case it was New York, and we had an unsettled question of law in Pennsylvania. That court had to make a prediction for purposes of the choice of law analysis to determine whether there was an outcome determinative conflict, so that it could then proceed to the most significant context test. What happens in the middle of the case whether that prediction is deemed inaccurate by the higher court in Indiana? Do they change in midstream and say, okay, well, I guess now they got it wrong. The federal court got it wrong. Their prediction was wrong. So do they go back to Illinois law then? Well, what happened, Judge, is the question really right now is for the threshold determination, what can satisfy the outcome determinative conflict? Right now, all we have is the federal district court opinions in Indiana. On their face, just like the Third District noted. That's the great thing about hypotheticals, though. I get to make anything up. And for the threshold determination, that's sufficient to create an outcome determinative conflict. But that doesn't mean that it's, that that other state's law is going to apply automatically. We still have that intermediate step. And that's the very important step, because that step is the underpinning of the choice of law doctrine, which is to ensure that the dispute is governed by the, it will have the same results, or be resolved the same way, under the appropriate law of the forum with the significant relationship to that dispute. And not by the fact that it was filed in a particular forum, such as in Illinois. Accepting X data would essentially allow litigants, such as Bridgeview, who are trying to evade the impact of adverse decisions, to file in Illinois, where they are able to assert jurisdiction over, they have jurisdiction over, or this Court would have jurisdiction over State Farm, and State Farm would then be essentially forum shopped with Illinois law, simply because X data allows a trial court, actually requires a trial court, to ignore the existence of the Federal District Court opinion simply for purposes of determining whether an outcome determinative conflict exists. The term outcome determinative conflict is very self-explanatory. Would the outcome be different? If you were to do what the Third Circuit did in Pacific Employers and accept, for the sake of the choice of law analysis only, that the outcome in Indiana would be different, then there is a difference with Illinois. Then the Court has to proceed, as the Appellate Court so found, and ordered on remand, for the trial court to conduct that most significant context. It's only if those, that test favors application of Indiana law, that we then have to get into what would that law actually be. And it could be that the Illinois State Trial Court could find that Indiana law would not agree with, or Indiana law would not espouse the analysis in the Federal District Court's opinion. But it would be doing that under Indiana law. And that's what's important. We need to make sure, to preserve the integrity of the choice of law doctrine, that the application of the law is that of the form that has the most significant relationship. And that... Ms. Healy-Allen, don't you think it's troublesome to decide this issue on the possibility of what the law would be, for outcome-determinative decision? I mean, we don't know what the law would be in Indiana. It's only being predicted, as Justice Thomas said. Isn't that troubling to you, that we would decide a case on the possibility of something happening? It's more troubling to me to have a trial court have the discretion to look to this authority, that it's available to it in every other context, taken away from it in this specific context. To further illustrate the absurdity that Bridgeview's argument presents, is that finding that there's an outcome-determinative conflict does not guarantee that the other form's law will be applied. All that it guarantees is that the choice of law doctrine, the purpose it serves, will be carried out. Meaning that an analysis will be undertaken to make sure that the form with the most significant relationship, that's going to be the law that's going to be applied. In your analysis, is there anything else besides a federal district court making a prediction that would be sufficient to answer the question of whether there's a prediction that there's a conflict? In other words, could it be a learned treatise, for example, that would create the conflict? Counsel, in his remarks, said that there needs to have some sort of precedent. So to answer your question, Judge, there would have to be some kind of persuasive precedent, even whether or not binding, to inform the trial court's decision on that point. What XDATA does is create a bright-line rule. What State Farm is not interested in is having this court simply make the opposite, mirror-opposite bright-line rule. What courts should have is the discretion that they enjoy anyway in all contexts. And there should be no difference with how a persuasive, non-binding authority, such as a federal district court prediction, is treated. And that's what XDATA does, though. It allows a litigant to avoid the application of, or the impact, the potential impact of adverse decisions by defaulting to an Illinois, to Illinois law simply by filing their case here in Illinois, where they can argue that XDATA requires courts to ignore an entire body of case law. I take it by your response to Chief Justice Garmon's question that learned treatise is not sufficient. If there were no federal decision that was non-binding but persuasive, would there be any reason to consider sending it back? Can the trial court take a look at Indiana law on its own and make its own interpretation without regard to treatises or non-binding federal authority? Well, in a choice-of-law scenario, the burden is always on the party seeking the application of another forum's law to present. So it would be incumbent upon the party to present to the trial court authority that demonstrates the outcome-determinative conflict or potential for same. That authority could run the gamut, and certainly there is a sliding scale of what would be persuasive, what would be binding, and the level of persuasiveness that should be accorded. But for this Court to decide the question today, there is no need to identify all sources and what relevance or deference they would have at the threshold determination. The question presented here is based on State Farm's identifying Federal District Court predictions of Illinois and Indiana law that do have a different outcome than the issue does in Illinois. That, for purposes of just the choice-of-law analysis, is sufficient to create the outcome-determinative conflict so that it triggers consideration of the most significant context test. How is whatever we do here not a bright-line rule as to whether or not Federal District Court predictions of State law would create a potential conflict situation? I mean, you mentioned bright-line rule. You said, you know, if we agree with opposing counsel, it's a bright-line rule. Why isn't it a bright-line rule if we agree with you? You're not saying that one trial judge after this decision could say, you know, I don't think there's a conflict in this situation where the Federal District Court makes a prediction, and the next trial judge down the hall said, yeah, I think maybe we have to look at it as a conflict situation. Isn't it a bright-line rule either way we go? Well, the better-reasoned approach would be to allow district courts to have the discretion to consider all available sources of the State's law and to find that, for purposes of the threshold determination, where that is persuasive, non-binding, even if it's not binding. Because the emphasis of Bridgeview's argument is there is no binding precedent. So because there's absence of binding precedent, there is no law. That cannot be true, because we know that those Federal District Court opinions did resolve actual controversies, were not advisory opinions. They are not binding. They are persuasive, and they are indicative of that State's law. But regardless of what we do, it's a bright-line rule either way with respect to Federal District Court opinions. It would be a rule that would allow district courts to have the discretion to consider everything at their disposal that they had before X data and they could once again have if X data were not accepted. The inherent difficulty with the X data rule is that it allows, it takes away, not only takes away from the trial court a tool at its disposal that it has in every other context, litigation context that it's presented with, but it gives the litigants control over when and if persuasive, non-binding authority even becomes relevant. Bridgeview would not be sitting here today making the arguments it's making if the Indiana Federal District Court opinions came down in favor of coverage, meaning that they espoused the analysis in Valley Forge. What they would be doing, they'd be the first ones to say that there is a false conflict because the result in Indiana would be the same as Illinois, so we apply Illinois law. That is inherently inconsistent because you cannot have Federal District Court opinions mean nothing and not exist for purposes of an analysis in one context and yet have them satisfy the false conflict requirement or criterion in another. So they're either persuasive and non-binding and something that a court can look to all the time or they're not. You cannot have it both ways. And that is exactly how Bridgeview would have it. And that's the result it would obtain if we were to, if the court were to accept the X data, the X data rule. However, you know, you want us to accept the issue for Federal District Courts on one hand, but this court, this Federal District Court didn't really decide the issue. They only predicted the issue. And what does it, what would, did they describe what Indiana would consider or take into account, utilize generally when it faced an issue of first impression? Did it describe how the Indiana courts come to conclusions before they decided how Indiana might rule? Well, Judge, what the Indiana Federal District Court did was examine the Indiana law, noted what the general contract principles were. It did spend some time discussing American states. And then it predicted that Indiana would adopt that analysis. But whether or not that prediction, that opinion is accurate and an accurate statement of Indiana law ultimately for its application is not a question that is present at the threshold determination of a choice of law context. What is, the only question is looking at what they are without and just for the purpose of choice of law. Are they different? And if they are, then we move to the next step. If and only if Indiana law is favored because of the most significant context test, that's when it becomes necessary and appropriate to do what Bridgeview has done in its brief, which is say that they're wrong, they would never follow, Indiana would never follow American states and that American states is the wrong rationale for all the reasons that they asserted in their brief. We are not there. In fact, the trial court was preemptively arrested in its analysis because as soon as the argument was it's Indiana state law, this Court's opinion in Valley Forge, versus Federal District Court opinions in Indiana, as soon as that was the contest, she was required to shut down and say those don't exist, those don't count for this choice of law, I have to ignore them. In fact, in her opinion, or her discussion, her ruling, she made it clear that this was a distinction between the Sears-Robut case, another First District case, where it was discussed that Illinois state trial courts have the discretion to look to Federal District Court opinions in ascertaining what another state's law, a sister state's law is. The trial court made the distinction to say, well, this is a conflicts case, and in a conflicts case, I can't look to that. That is a problem, Judge, because, again, it gives too much power to the litigant to say I don't need to agree to this other state's law because I don't like what that law might represent for me. I'm going to avoid it. If I disagree that this law applies, I create the conflict scenario, and now I can argue that that law doesn't even exist because it's not from a binding source. However, in a situation where the parties do agree on the application of the law and it's just a question of what that law is, all of a sudden the blinders are off and the trial court can look to everything. That is an inconsistent manner in which Federal persuasive authority should be considered. It should be considered consistently regardless of the context. Also, this raises a problem with comedy. Illinois courts are do have come to expect that their decisions will be treated with due deference and regard by sister states. But yet X data doesn't do the same. It does not reciprocate. Sister state jurisdiction cases, if they come from another source, such as a Federal district court opinion, all of a sudden do not exist in this context alone. The better rule would be to have Illinois trial courts have the discretion to consider the all sources available to them for determining whether an outcome determinative conflict exists, allow them to proceed to the most significant context test if an outcome determinative conflict does exist, and then allow that court, if it needs to, to then apply the other State's law if that law or if that law has a significant relationship to the dispute. Counselor, do you believe that Illinois precedent in Townsend helps you or not? The Illinois precedent in Townsend, with respect to the outcome determinative conflict, does. But Townsend is a contract or, excuse me, a tort case, whereas the choice of law principles in Lapham-Hickey would be more appropriate for this Court or for the trial court on remand or this Court to consider for purposes of the most significant relationship. Thank you. There was no express choice of law provision in this insurance contract? No, there is not. Thank you. If there are no further questions, thank you, Your Honor. Thank you, Your Honors. I'll try and be brief, although I'm sure you hear that a lot. Counsel has admitted that it is State Farms' burden to establish an actual conflict law in this case. They've had plenty of opportunities to do it.  They cited no Indianapolis case. They cited no Indiana decisions in their briefing. They cited three Federal predictions that, as Justice Burke observed, didn't themselves go into Indiana law. Rather, these predictions very clearly followed the Seventh Circuit's prediction in American states of Illinois law and not Indiana law. And for a party that needs to carry the burden to establish an actual outcome determinative conflict, potential for conflict is not enough. Silence is not enough. Authority is what's necessary. And it's got to be actual precedential authority. Otherwise, it's a prediction. It's an observation. It's a summation. And if we're going to have a rule that requires an actual conflict before we get into the business of applying another state's law, we need authority. We can't have predictions. If we agree with your position, are there any ramifications to a rule that says federal nonbinding persuasive law is not to be considered in any case in Illinois? Well, first of all, that's really not the rule I'm advocating for that we're advocating for. I think that's the straw man that State Farm would like to beat up on. The rule would be that the source of an actual conflict of law to satisfy the Townsend requirement needs to be state law. Now, a federal decision, a federal prediction can be considered in determining whether there is a body of state law that says something different than Illinois. This case simply, the federal predictions that have been put forward don't carry that burden. And that's the problem. So the rule is that not that they can't be considered, the rule is that the outcome of the federal case, the prediction, doesn't matter. What matters is the analysis of the state law. And with regard to that question, again, there's been plenty of opportunities to try and point up some difference in the way Indiana treats these insurance coverage questions from the way Illinois does, and the insurers have taken a pass. We actually went through it, and we provide some case law on pages 18 to 20 of our opening brief that really demonstrates that Indiana's point-by-point analysis of this issue is entirely consistent with Illinois'. But at any rate, it's not our burden to establish the absence of a conflict. It's their burden to establish that one exists, and they haven't done it. With respect to the policy argument advanced regarding if we stick to the rule that Illinois courts will apply Illinois law in the absence of an actual conflict, that all of a sudden everybody's going to run to Illinois courts, it seems kind of silly. I mean, it seems like the reverse is the problem, if anything, that if we do, in this case, what State Farm would like, then the insurers will simply run to federal court rather than deal with Illinois or any of the other many states that have found coverage in this area. But at the end of the day, the principles that I think are most important are what we highlighted earlier, which is the Gridley-Barber sales principle that the default is Illinois law and that there needs to be a strong reason to depart from it, and that courts need to have the guidance that Townsend means what it says, and that without an actual conflict of law, Illinois law applies. Thank you. Case number 116389, Bridgeview Health Care Center Limited v. State Farm Fire and Casualty Company will be taken under advisement. Is agenda number 10, Mr. Oppenheim, Ms. Toon William, are you excused? Thank you for your arguments today.